UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAM PHAN NGUYEN,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 20-CV-2391-WVG<br><br>**ORDER ON PLAINTIFF'S INITIAL AND SUPPLEMENTAL EX PARTE APPLICATIONS FOR EAJA FEES** |

### I.      INTRODUCTION

Before the Court are Tam Phan Nguyen's ("Plaintiff") Initial *Ex Parte* Application for EAJA Fees ("Initial Application") and Supplemental *Ex Parte* Application for EAJA Fees. (Doc. Nos. 32, 38.) Plaintiff's Initial Application seeks an award of attorney fees in the amount of $34,125.53 and $1,500.00 in costs pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412. Plaintiff's Supplemental Application seeks an additional award of attorney fees in the amount of $5,983.95 and $1,800.00 in costs pursuant to the EAJA, both amounts which Plaintiff purports to have accrued since the filing of his Initial Application. Kilolo Kijakazi, Commissioner of Social Security, ("Defendant" or "Commissioner") opposes all costs and nearly the entirety of the fees Plaintiff seeks under both the Initial and Supplemental Applications. (Doc. Nos. 33, 39.) The Court has reviewed and considered the Parties' submissions. Having done so, the Court GRANTS IN PART

and DENIES IN PART Plaintiff's Initial Application, DENIES Plaintiff's Supplemental Application, and elaborates below.

## II.   BACKGROUND

On October 11, 2013, Plaintiff applied for disability benefits pursuant to Titles II and VI of the Social Security Act. (AR 182-186.) On February 6, 2014, the Commissioner initially denied Plaintiff's applications. (AR 46–63.) On April 7, 2014, Plaintiff requested reconsideration of the Commissioner's initial determination. (AR 124–25.) On June 25, 2014, the Commissioner denied reconsideration. (AR 66–95.) A hearing on Plaintiff's applications followed on January 4, 2016, before assigned Administrative Law Judge Jay E. Levine ("ALJ Levine"). (AR 14-43.) On April 1, 2016, ALJ Levine issued his Notice of Decision, finding Plaintiff was not disabled within the meaning of the Social Security Act and denying disability benefits accordingly. (AR 96-113.) ALJ Levine's adverse determination prompted Plaintiff to initiate this lawsuit. Plaintiff filed the operative Complaint on December 8, 2020, requesting this Court's review of the Commissioner's final decision on his disability benefits applications. (Doc. No. 1.) The Court issued the operative Scheduling Order on December 22, 2021. (Doc. No. 13.)

On April 6, 2022, Plaintiff filed an *Ex Parte* Application for Extension of Time to File the Joint Motion and to Comply with the Court's December 22, 2021, Scheduling Order. (Doc. No. 16.) The filing revealed Plaintiff missed his February 18, 2022, deadline to serve his portion of the Joint Motion for Judicial Review. The filing also showed Plaintiff unilaterally continued his briefing deadline to March 8, 2022, with Defendant's stipulation but without seeking and obtaining leave of court. Plaintiff's non-compliance then triggered Defendant to engage in non-compliance of its own. Due to Plaintiff's delay in submitting his briefing, Defendant then unilaterally continued its April 1, 2022, deadline to serve its portions of the Joint Motion for Judicial Review to April 22, 2022, with Plaintiff's stipulation but without leave of court. Plaintiff also failed to comply with Civil Chambers Rule VI's notice requirement upon filing the April 6, 2022, *Ex Parte* Application by failing to provide advance notice of the filing to Chambers.

Consequently, on April 8, 2022, the Court issued an Order to Show Cause ("OSC") as to why sanctions should not issue against both Plaintiff and Defendant for their non-compliance. (Doc. No. 18.) On April 21, 2022, the Court convened a hearing on the OSC pursuant to its April 12, 2022, Order. (Doc. No. 22.) In relevant part, Plaintiff's counsel explained she was ignorant of the applicable procedural rules and asked for the Court's forgiveness. (Doc. No. 27.) Following the hearing, the Court issued a same-day order discharging the OSC and sparing both Parties and their counsel from sanctions. (*Id*.)

The Parties filed their Joint Motion for Judicial Review on April 22, 2022, consistent with the operative Scheduling Order. (Doc. No. 28.) On February 27, 2023, this Court issued its dispositive Order on the Parties' Joint Motion for Judicial Review. (Doc. No. 30.) Ultimately, the Court granted in part and denied in part the Parties' Joint Motion for Judicial Review and remanded the case for further administrative proceedings. (*Id*.) The Court limited the remanded proceedings to curing ALJ Levine's improper (1) rejection of the medical opinions of Drs. Marquardt, Aiken, Grisolia, and Zappone and (2) assessment of Plaintiff and Plaintiff's mother's credibility. (*Id*. at 24:23-27.)

Following the Court's February 27, 2023, Order, Plaintiff filed his Initial *Ex Parte* Application for EAJA Fees on March 23, 2023. (Doc. No. 32.) Defendant opposed the Initial Application on March 24, 2023. (Doc. No. 33.) On March 27, 2023, the Court issued an Order denying without prejudice Plaintiff's Initial Application and requiring the Parties to meet and confer in good faith to reach a joint resolution on their fee dispute. (Doc. No. 34.) The Parties failed to reach resolution and, on May 5, 2023, Plaintiff's counsel contacted this Court's Chambers to advise of Plaintiff's intent to renew his Initial *Ex Parte* Application for EAJA Fees. (Doc. No. 35.) For a second time, the Court found a lack of "any meaningful negotiation between the Parties" in light of the Parties' unwillingness to adjust their settlement position. (*Id*., at 1:28-2:2.) Consequently, the Court issued a same-day Order requiring the Parties to engage in additional meet and confer efforts to resolve their fee dispute. (*Id*.) On May 11, 2023, consistent with the Court's May 5, 2023, Order, the Parties filed a Joint Status Report apprising the Court that their additional meet and confer efforts were fruitless. (Doc. No. 36.) As a result, Plaintiff's Supplemental *Ex Parte*

3

Application for EAJA Fees followed on May 19, 2023. (Doc. No. 38.) Defendant opposed Plaintiff's Supplemental Application on May 24, 2023. (Doc. No. 39.) As noted, the fee dispute as raised in both the Initial and Supplemental Applications is now ripe for this Court's adjudication.

### III.   LEGAL STANDARD

Under the EAJA, "a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005). "It is the government's burden to show that its position was substantially justified or that special circumstances exist to make an award unjust." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). "An applicant for disability benefits becomes a prevailing party for the purposes of the EAJA if the denial of h[is] benefits is reversed and remanded regardless of whether disability benefits ultimately are awarded." *Shalala v. Schaefer*, 509 U.S. 292, 300–01 (1993); *Anh Tuyet Thai v. Saul*, 2020 WL 4697971, at *1 (S.D. Cal. Aug. 13, 2020) (citing *Gutierrez v. Barnhart*, 274 F.3d 1255, 1257 (9th Cir. 2001).).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. Hours that are excessive, redundant, or otherwise unnecessary should be excluded from an award of fees. *Id*. at 434. "There is a strong presumption that the 'lodestar figure' represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996); *see also Doan v. Berryhill*, 2018 WL 2761733, at *3 (S.D. Cal. June 7, 2018) ("Generally, the court should defer to the winning lawyer's professional judgment as to how much time was required for the case."). If the government disputes the reasonableness of the fee, then it "has a burden of rebuttal that requires submission of

4

evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992); *Soldwisch v. Saul*, 487 F. Supp. 3d 931, 933–34 (S.D. Cal. Sept. 14, 2020) (citing same).

## IV. DISCUSSION

The Commissioner does not dispute that Plaintiff is generally owed attorney fees under the EAJA as a prevailing party. Concurrently, the Commissioner disputes Plaintiff's Initial and Supplemental Applications on grounds of unreasonableness as to both Plaintiff's counsel's hourly rate and the fees sought. The Court addresses each matter in turn.

### a. Reasonableness of Plaintiff's Counsel's Hourly Rate

The EAJA provides that the Court may award reasonable attorney fees "based upon prevailing market rates for the kind and quality of the services furnished," but "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *Sergio C. v. Kijakazi*, 2022 WL 1122847, at *3 (S.D. Cal. Apr. 14, 2022) (citing same). In the Ninth Circuit, the EAJA maximum hourly rates as adjusted for increases in the cost of living are set forth immediately below:

- For work performed in 2017, the EAJA maximum hourly rate is $196.79;
- For work performed in 2018, the EAJA maximum hourly rate is $201.60;
- For work performed in 2019, the EAJA maximum hourly rate is $205.25;
- For work performed in 2020, the EAJA maximum hourly rate is $207.78;
- For work performed in 2021, the EAJA maximum hourly rate is $217.54; and
- For work performed in 2022, the EAJA maximum hourly rate is $234.95.

*See* United States Courts for the Ninth Circuit, Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited June 16, 2022); *see also Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) (noting the "EAJA provides for an upward adjustment of the $125 rate contained in the statute, based on cost-of-living increases") (citing 28 U.S.C. § 2412(d)(2)(A).).

5

Here, Plaintiff's Initial Application accurately sets forth the Ninth Circuit's EAJA Statutory Maximum Rates as outlined above. (Doc. No. 32-1, 11:1-8.) Even so, Plaintiff does not seek an award of attorney fees set to the maximum hourly rates. Instead, Plaintiff moves for an enhancement of the applicable maximum hourly rates by $50, arguing his counsel is "entitled to the statutory enhanced hourly EAJA rate of $246.79 to $234.95[1] since all of counsel's work was done from 2017 to 2023." (*Id.*, 11:9-10.) Plaintiff explains a rate enhancement is appropriate because Plaintiff's counsel's fluency in Vietnamese language and culture qualifies as a "special factor" suitable for enhancement under *Pierce v. Underwood*, 487 U.S. 552, 572 (1988) and *Pirus v. Bowen*, 869 F.2d 536, 542 (9th Cir. 1989). (*Id.*, 12:1-8.) Plaintiff adds Plaintiff's counsel's expertise in social security law and supply of "indispensable services to plaintiff who would not otherwise be able to have access to legal services to vindicate his civil rights" further supports a rate enhancement here. (*Id.*, 13:15-17.) Defendant disputes that an hourly rate enhancement is appropriate to any extent. The Court agrees in part. Under the discrete circumstances of this case, the Court does not find Plaintiff's counsel's experience in social security law justifies a rate enhancement. However, the Court finds counsel's linguistic fluency constitutes a special factor that would justify a rate enhancement, with certain limitations provided. The Court unpacks each point respectively.

As to Plaintiff's counsel's expertise in social security law, the Court is not persuaded this case presented complex or esoteric matters of law under the Social Security Act that called upon "distinctive knowledge or specialized skill needed for the litigation." *Pierce*, 487 U.S. at 572 (indicating Congress intended for courts to deviate from the statutory maximum hourly rates only where there is limited availability of "attorneys having some

---

[1] It appears Plaintiff inadvertently erred in calculating the upper end of the excerpted range of the maximum hourly rates enhanced by $50. $50 added to the 2017 maximum hourly rate of $196.79 yields $246.79, as Plaintiff accurately indicated. However, $50 added to the 2023 maximum hourly rate of $234.95 yields $284.95, rather than $234.95 as Plaintiff indicated. Therefore, the Court presumes Plaintiff seeks a $246.79 to $284.95 range of maximum hourly rates with a $50 rate enhancement applied.

distinctive knowledge or specialized skill needful for the litigation in question"); *Pirus*, 869 F.2d at 541-542 (emphasizing "It is not enough, however, that the attorney possess distinctive knowledge and skills. Those qualifications warrant additional fees only if they are in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate.").

Here, the discrete issues for the Parties to brief and the Court to decide were whether ALJ Levine erred in his assessment of (1) Drs. Marquart, Aiken, Henderson, Miller, Lessner, Grisolia, and Zappone's opinions and (2) Plaintiff and Plaintiff's mother's credibility. (Doc. No. 30, 14:16-19.) An ALJ's evaluation of medical opinions and claimant and witness' credibility does not call for the kind of "special expertise" Supreme Court and Ninth Circuit precedent has found when granting an exception under the EAJA to enhance a statutory maximum hourly rate. *Compare Pirus*, 869 F.2d at 542 (affirming district court decision to award EAJA rate enhancement was appropriate because "Pirus' class action was no routine disability case; it required substantial knowledge of the legislative history of the 'widow's insurance' provisions of the Act.").

In his Initial Application, Plaintiff argues his counsel clears the "special expertise" bar simply because counsel is experienced in practicing social security law. The Ninth Circuit dismissed exactly this ground as a basis for a rate enhancement under the EAJA. *Pirus*, 869 F.2d at 541-542 ("It is not enough, however, that the attorney possess[es] distinctive knowledge and skills. Those qualifications warrant additional fees only if they are in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate."). Plaintiff's Supplemental Application offers nothing to advance his argument on this front. Even so, to merit a rate enhancement for practice-area expertise, Plaintiff must follow *Pirus*' directive, namely that Plaintiff establish his counsel's expertise is "needed in the litigation and could not be obtained elsewhere at the statutory rate." *Id*.

The case law emanating from this District that implicates ALJ assessments of medical opinions and claimants' credibility belie Plaintiff's position that no attorney possessing expertise in social security law was available to represent Plaintiff at the statutory rate. *See Lynnmarie E. v. Saul*, 2021 WL 2184828, at *3 (S.D. Cal. May 28, 2021)

7

(addressing ALJ's assessment of medical opinions and Plaintiff's credibility); *see also id.*, 2022 WL 2441304, at *2 (S.D. Cal. July 5, 2022) (granting Joint Motion for EAJA Fees and adopting the EAJA maximum hourly rate pursuant to Parties' request, explaining "The hourly rate is also reasonable. Counsel's hourly rate of $217.54 is equal to the Ninth Circuit's EAJA hourly rate."); *Haas v. Saul*, 2021 WL 615053, at *4 (S.D. Cal. Feb. 17, 2021) (same) (*see* Doc. Nos. 23, 24 in Case No. 19-CV-2189-BGS granting in its entirety the Parties' Joint Motion for EAJA Fees, which requested the Court's application of the EAJA statutory maximum rate); *Demetrius R. v. Saul*, 2020 WL 4530754, at *5 (S.D. Cal. Aug. 5, 2020), report and recommendation adopted sub nom. *Rashaad v. Saul*, 2020 WL 5201353 (S.D. Cal. Sept. 1, 2020) (addressing ALJ's assessment of medical opinions) (*see* Doc. Nos. 27, 28 in Case No. 19-CV-1126-MMA-MDD granting in its entirety the Parties' Joint Motion for EAJA Fees, which requested the Court's application of the EAJA statutory maximum rate); *Johnson v. Kijakazi*, 2022 WL 3362051, at *14 (S.D. Cal. Aug. 15, 2022) (same) (*see* Doc. Nos. 19, 20 in Case No. 21-CV-1284-NLS granting in its entirety the Parties' Joint Motion for EAJA Fees, which requested the Court's application of the EAJA statutory maximum rate).

      The legal issues decided in the above-noted cases, and the many other cases from this District which this Court does not exhaustively list here, overlap with legal issues the Parties briefed in this Action. Moreover, the cases cited herein establish there are attorneys, other than Plaintiff's counsel here, who are sufficiently experienced in social security law to parse through like legal issues, prevail, and request and accept the EAJA statutory maximum hourly rate and nothing more. Plaintiff offers nothing to meet her burden of proof to the contrary. For this reason alone, the Court declines to apply a rate enhancement on the basis of Plaintiff's counsel's practice-area expertise. *See Nayab v. Astrue*, 2008 WL 4748172, at *5 (S.D. Cal. Oct. 28, 2008) (declining to apply statutory maximum rate enhancement and noting Ms. Manback's "reliance on *Pirus*… [wa]s misplaced because unlike the instant case, *Pirus* involved a highly complex area of Social Security law," as here.); *see* related, underlying case *Nguyen v. Berryhill*, 2017 WL 3020958, at *3 (S.D. Cal. July 17, 2017) (rejecting Ms. Manbeck's expertise in social security law as a proper

8

basis for EAJA rate enhancement, where case "was relatively straightforward" and "not uniquely complex" in challenging the ALJ's assessment of medical opinions and evidence.).

Relatedly, the Court would be remiss if it overlooked Plaintiff's counsel's compliance issues throughout this litigation in view of Plaintiff's request for a rate enhancement on the basis of his counsel's practice-area expertise. Plaintiff's counsel's years of experience litigating social security cases are tempered by her procedural missteps before this Court. To be sure, those missteps were not insignificant. As noted, Plaintiff's April 6, 2022, *Ex Parte* filing failed to comply with Rule VI of this Court's Civil Chambers Rules for his counsel's failure to provide proper notice to this Court's Chambers. Beyond the procedural technicality, Plaintiff's counsel missed Plaintiff's February 18, 2022, deadline to serve Plaintiff's portion of the Joint Motion for Judicial Review. Magnifying the issue, Plaintiff's counsel unilaterally continued the deadline to March 8, 2022, absent leave of court. Equally glaring, Plaintiff's counsel's non-compliance had a cascading effect. In unilaterally continuing his own briefing deadline, Plaintiff undercut Defendant's timeline to comply with the Court's operative deadline for Defendant's service of its portion of the Joint Motion for Judicial Review. In turn, Plaintiff's non-compliance triggered Defendant to engage in non-compliance of its own. Due to Plaintiff's delay in submitting his briefing, Defendant then unilaterally continued its April 1, 2022, deadline to serve its portions of the Joint Motion for Judicial Review to April 22, 2022, without leave of court. At the April 21, 2022, OSC hearing, Plaintiff's counsel admitted her ignorance of the rules of this District – a matter which Plaintiff evidently declined to revisit in seeking a rate enhancement in his Initial and Supplemental Applications.

Plaintiff's counsel's unremarkable approach to this case's progression persisted through this year. As indicated in this Court's March 27, 2023, Order denying Plaintiff's Initial Application without prejudice, counsel prematurely filed Plaintiff's Initial Application and also failed to engage in an exhaustive, good-faith meet and confer effort on the fee dispute prior to proceeding with the filing. (Doc. No. 34.) These circumstances compelled the Court to intervene and order further meet and confer discussions between

the Parties as set forth in the Court's May 5, 2023, Order. (Doc. No. 35.) Due to the Parties' ongoing inability to make any progress on their dispute – a matter to which Plaintiff's counsel contributed at least as much as defense counsel – supplemental motion practice followed. (*See id.*) For these collective reasons, the Court strains to adopt the view that Plaintiff's counsel demonstrated anything beyond an ordinary level of expertise in litigating her way through this case. The Court will not reward her non-compliance with the rate enhancement Plaintiff requests here on the ground of practice-area expertise.

The Court now turns to Plaintiff's second ground to support his request for a rate enhancement, namely his counsel's fluency in Vietnamese language and culture. It is established law that "knowledge of a foreign language is a specialized skill warranting fees enhancement under § 2412(d)(1)(A), "where such qualifications are necessary." *Pierce*, 487 U.S. at 572; *see also Nguyen*, 2017 WL 3020958, at *2 (citing same). Plaintiff's Declaration in support of Plaintiff's Supplemental Application makes clear Plaintiff heavily relied upon his counsel's translation skills in Vietnamese to establish and maintain communication throughout this litigation. (Doc. No. 38-1, ¶¶ 3-4 ["Without attorney Manbeck, I would never have continued my appeal of the Social Security benefits as I could not speak English well and could not possibly explain to a non-Vietnamese speaking attorney… Ms. Manbeck's advice kept me going and dispel [my] hopelessness."].) Accordingly, Plaintiff's counsel's linguistic skills in Vietnamese enabled Plaintiff to prosecute this Action and constitute the kind of specialized language skills that merit a rate enhancement under the EAJA under *Pierce* and its progeny. Even so, the circumstance alone does not warrant the rate enhancement Plaintiff seeks.

Additionally, as noted, Plaintiff must demonstrate he could have not received such specialized representation elsewhere at the statutory rate. The threshold for making this showing is modest. *See Nadarajah v. Holder*, 569 F.3d 906, 915 (9th Cir. 2009) (citing *Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 493 (1st Cir. 2009) (noting a declaration with "at least modest support" that legal assistance at the statutory rate was unavailable sufficiently showed no other counsel would represent plaintiff at the statutory rate."). Here, Plaintiff did not submit a Declaration in support of his Initial Application,

10

but his Declaration in support of his Supplemental Application meets the modest bar he must clear. (*See* Doc. No. 38-1, ¶ 2 [stating "Without [Ms. Manbeck's] help and representation, I would never have been able to apply for benefits…after so many years of looking around even with the help of my English-speaking brother I was unable to obtain legal help to apply for benefits."].) For this reason, the Court finds Plaintiff has adequately established that a Vietnamese-speaking attorney was not available elsewhere to litigate this case at the statutory maximum hourly rate. *Nguyen*, 2017 WL 3020958, at *3 (concluding same after Ms. Manbeck submitted a declaration in that case explaining, in relevant part, "there is no attorney available to take on these types of cases involving Vietnamese refugees applying for SSI benefits in Southern California."). Accordingly, the Court finds the rate enhancement is appropriate and adopts the $50 hourly rate enhancement, consistent with its below analysis.

### b. Reasonableness of Plaintiff's Counsel's Time Billed

Plaintiff next contends his counsel expended the following number of hours in service of this matter, inclusive of both administrative and court proceedings:

- For work performed in 2017, 6.0 hours billed;
- For work performed in 2018, 6.5 hours billed;
- For work performed in 2019, 1.75 hours billed;
- For work performed in 2020, 16.75 hours billed;
- For work performed in 2021, 0.25 hours billed; and
- For work performed between 2022 and 2023, 92.5 hours billed.

Defendant opposes Plaintiff's compensation for a sum of 43.75 hours for work performed exclusively for administrative proceedings before the Commissioner. (Doc. No. 39, 5:15-17.) The Court agrees with Defendant on this point. Plaintiff's counsel's Declaration in support of Plaintiff's Initial Application itemized billing entries for work performed between July 31, 2017, and July 21, 2020, that wholly relate to Plaintiff's preparation for and participation in his first round of post-remand proceedings in *Nguyen v. Berryhill*, Case No. 17-CV-1406-MMA-NLS, the first action Plaintiff filed in this

District resulting in the remanded proceedings that prompted the instant Action ("Nguyen I"). (*See* Doc. No. 32-2 at 5.)

As a general matter, the EAJA limits recovery of attorney fees to time counsel worked during litigation and thus excludes from compensation attorney fees accrued in remanded administrative proceedings. *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995), as amended on denial of reh'g (June 5, 1995) (stating "Ordinarily, claimants whose cases are remanded under sentence four may not recover attorney's fees for post-remand administrative proceedings."). "There is an exception to this general rule, however, where the district court fails to enter an order of final judgment upon remand and neither party challenges this omission." *Id*. In Nguyen I, the Court ordered remanded proceedings on discrete issues and did not retain jurisdiction. (*See* Doc. No. 21 in *Nguyen v. Berryhill*, Case No. 17-CV-1406-MMA-NLS.) Equally important, the docket reflects neither party challenged the Court's omission of retention of jurisdiction over the post-remand administrative proceedings. Even if it were inclined to award fees in an action separate from this one – which it is not – the Court finds there are no viable grounds to compensate Plaintiff's counsel for work performed between July 31, 2017, and July 21, 2020. Accordingly, the Court declines to compensate Plaintiff's counsel for 6.0 hours billed in 2017, 6.5 hours billed in 2018, 1.75 hours billed in 2019, and 8.5 hours billed in 2020 for purposes exclusively limited to post-remand administrative proceedings in Nguyen I.

Relatedly, the Court declines to compensate Plaintiff's counsel for the 21.0 hours Plaintiff's counsel billed in 2023 following this Court's February 27, 2023, Order on the Parties' Joint Motion for Judicial Review. (Doc. No. 30.) In Plaintiff's Supplemental Application, Plaintiff's counsel avers she has "spent 21 additional hours" to prepare for the administrative proceedings that resulted from the Court's February 27, 2023, dispositive Order. (Doc. No. 38-2, ¶¶ 5-6.) As discussed immediately above, the EAJA does not contemplate a prevailing party's recovery of counsel's time spent on post-remand administrative proceedings where the Court does not retain jurisdiction and the Parties fail to object to the Court's abstention from retaining jurisdiction. Both circumstances are present in the instant Action. Thus, the Court will not confer an award of attorney fees for

the 21.0 hours Plaintiff's counsel has purportedly worked in 2023 for the exclusive purpose of remanded administrative proceedings.

The Court now addresses the billing entries that correspond to litigation-related work Plaintiff's counsel contends to have completed between December 1, 2020, and March 16, 2023. In doing so, the Court addresses the billing entries per each calendar year for ease of calculating the lodestar value under the respective enhanced hourly rate. Beginning with 2020, the Court finds the five billing entries summating to 8.25 hours to be reasonable. Accordingly, the Court multiplies the enhanced EAJA maximum hourly rate of $257.78 (the sum of the $207.78 maximum hourly rate plus $50) by the 8.25 hours billed to yield a lodestar value of **$2,126.69 for 2020**. Turning to 2021, Plaintiff's counsel billed 0.25 to discuss with her client's family the matter of consenting to this Court's jurisdiction. (Doc. No. 32-2 at 5.) The Court finds the time billed to be reasonable. Accordingly, the Court multiplies the enhanced EAJA maximum hourly rate of $267.54 (the sum of the $217.54 maximum hourly rate plus $50) by 0.25 hours billed to yield a lodestar value of **$66.89 for 2021**.

For 2022, Plaintiff's counsel billed 75.0 hours to this litigation. The Court specifically discusses those entries which it deems unreasonable for their excessiveness and duplicative nature. Regarding excessiveness, the Court finds Plaintiff's counsel's 2.5 hours spent "prepar[ing] Plaintiff's ex-parte motion for Extension of Time" on April 6, 2022, and 0.5 hours spent "review[ing] Court's Order re sanctions" on April 22, 2022, to be excessive and unreasonable. (Doc. No. 32-2 at 7.) Plaintiff's April 6, 2022, *Ex Parte* Application for Extension of Time to File the Joint Motion consisted of four paragraphs and an accompanying declaration paraphrasing the Application itself; the Court finds Plaintiff's 2.5 hours billed to be inflated given the filing's brevity and simplicity. (Doc. No. 16.) Moreover, the Court finds this billing entry to be unworthy of compensation, primarily because it arose from counsel's failure to comply with the operative Scheduling Order and the applicable rules governing *ex parte* applications. Thus, the Court reduces Plaintiff's counsel's time spent on this task by all 2.5 hours billed. Separately, the Court's April 21, 2022, Order Following the OSC Hearing consisted of three pages. (Doc. No. 27.)

The Court finds no compensation to be the only reasonable adjudication of this billing entry. Plaintiff's counsel's review of the Court's OSC Order was necessitated by Plaintiff's disregard of the Court's Scheduling Order and Civil Chambers Rules. The Court will not reward Plaintiff's counsel for time spent in response to litigation tasks that were entirely avoidable but for counsel's non-compliance. Thus, the Court reduces Plaintiff's counsel's time spent on this task by 0.5 hours. Collectively, then, the Court reduces Plaintiff's counsel's 75.0 hours billed in 2022 by 3.0 hours due to excessiveness.

        The Court now addresses billing entries in 2022 that it deems duplicative in nature. The Court first calls attention to Plaintiff's counsel's billing entries dated January 12, 2022, and January 14, 2022. On January 12, 2022, counsel billed 2.5 hours for "draft[ing] and prepar[ing] plaintiff's settlement offer." (Doc. No. 32-2 at 6.) Two days later, counsel billed 6.0 hours for "finaliz[ing] settlement offer re summary judgment and send[ing] offer to defendant's counsel." (*Id.*) The Court finds the collective 8.5 hours billed to the same task to be excessive and duplicative. Accordingly, the Court reduces Plaintiff's counsel's time billed to this task to 4.25 hours and thus reduces the time billed by 4.25 hours. Next, the Court notes Plaintiff's counsel billed 6.5 hours to "finalize memo for joint motion" on February 15, 2022; 6.25 hours to "finalize memo for joint motion and email to defendant's counsel" on March 6, 2022; and 4.0 hours to "complete Plaintiff's Joint Motion and send via email to Defendant's counsel" on April 6, 2022. (*Id.*) Collectively, the billing entries total 16.75 hours, which is separate from and in addition to the 12.5 hours counsel billed between February 10, 2022, and February 13, 2022, to prepare Plaintiff's portion of the Joint Motion for Judicial Review. (*Id.*) The Court finds counsel's repeated attempts to "finalize" Plaintiff's brief, amassing to 16.75 hours, to be excessive. Accordingly, the Court reduces Plaintiff's counsel's time billed to finalize Plaintiff's portion of the Joint Motion for Judicial Review to 8.0 hours, thus reducing the total time billed to the "finalizing" task by 8.75 hours. Taken together, the reduction of 4.25 hours from counsel's time to finalize Plaintiff's settlement offer and 8.75 hours from counsel's time to finalize Plaintiff's portion of the Joint Motion for Judicial Review yields a total reduction of 13.0 hours due to Plaintiff's counsel's duplicative billing.

In summary and specific to 2022, the Court finds it appropriate to reduce Plaintiff's counsel's 75.0 hours billed by 3.0 hours due to excessiveness and 13.0 hours due to duplicative billing, yielding a total reduction of 16.0 hours for 2022. In turn, the Court adjusts Plaintiff's counsel's time billed in 2022 to 59.0 hours. To that end, the Court multiplies the enhanced EAJA maximum hourly rate of $284.95 (the sum of the $234.95 maximum hourly rate plus $50) by the 59.0 adjusted hours billed to yield a lodestar value of **$16,812.05 for 2022**.

Finally, the Court addresses Plaintiff's counsel's billing entries in 2023. Having reviewed the five entries spanning March 1, 2023, through March 16, 2023, the Court finds the time counsel billed to be reasonable. Accordingly, the Court adopts 17.5 hours counsel billed in its lodestar calculation. Further, because the Ninth Circuit has not yet issued a maximum hourly rate specific to the year 2023, the Court applies the enhanced EAJA maximum hourly rate of $284.95 for 2022 to its instant calculation. Thus, the Court multiples the enhanced hourly rate of $284.95 by 17.5 hours billed to yield a lodestar value of **$4,986.63 for 2023**.

Given the foregoing, the Court summates Plaintiff's counsel's total fee award as follows:

- 2020 fee award of $2,126.69
- 2021 fee award of $66.89
- 2022 fee award of $16,812.05
- 2023 fee award of $4,986.63
- **Total attorney fee award spanning 2020 through 2023: $23,992.26**

Finally, the Court exercises its discretion and applies a ten (10) percent reduction to the attorney fee award of $23,992.26 and thus reduces the award by an additional $2,399.23 to yield a total attorney fee award of $21,593.03. *Whitaker v. SMB Grp.*, 2021 WL 5150045, at *2 (9th Cir. Nov. 5, 2021) (affirming district court's "permissible" reduction of ten (10) percent to fee award after explaining counsel's billing was excessive in view of comparable cases and noting it was a "routine, non-complex case"); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (holding a district court has the "authority to

reduce hours that are billed in block format" because a "fee applicant bears the burden of documenting the appropriate hours expended" and "block billing makes it more difficult to determine how much time was spent on particular activities"); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (finding "a reasoned exercise of discretion" for a district court to reduce block-billed hours by more than 15 percent, exclude "fees incurred because of court-requested supplemental information," and impose "an additional 10% across-the-board reduction for excessive and redundant work").

Here, the Court finds a ten percent reduction to the entire fee award appropriate due to Plaintiff's counsel's block-billing of her billing entries (*e.g.*, December 1, 2020, billing entry for 1.5 hours for "review[ing] file, research[ing] case law, and discuss[ing] with clamant and claimant's family" and January 1, 2022, billing entry for 4.5 hours for "exchang[ing] emails with defendant's counsel; discuss[ing] with counsel and draft[ing] plaintiff's settlement offer. Review[ing] prior litigation."). (Doc. No. 32-2, 5-6.) Plaintiff's counsel's block-billing practice leaves the Court to speculate regarding how much time each task within the block-billed time entry consumed – an impossible assignment the Court declines to undertake here. Further, the Court finds the ten percent reduction appropriate for the billing entries' combined vagueness and seemingly excessive and duplicative nature (*e.g.*, February 16, 2022, billing entry for 5.75 hours for "research[ing] case law for joint motion" and April 5, 2022, billing entry for 6.5 hours for "research[ing] case law and finaliz[ing] Plaintiff's Opening of Joint Motion"). (*Id*. at 6-7.)

Finally, the Court observes that the fee award Plaintiff seeks here constitutes an outlier when compared against the fee awards requested and granted throughout this District in cases implicating the same issues, namely those concerning an ALJ's resolution of medical opinions and claimants' credibility. *Lynnmarie E.*, 2022 WL 2441304, at *2 (S.D. Cal. July 5, 2022) (granting Joint Motion for EAJA Fees and fee award of $7,350.00); *Haas*, 2021 WL 615053, at *4 (S.D. Cal. Feb. 17, 2021) (Doc. No. 24 in Case No. 19-CV-2189-BGS granting Joint Motion for EAJA Fees and fee award of $7,000.00); *Demetrius R.*, 2020 WL 4530754, at *5 (S.D. Cal. Aug. 5, 2020), report and recommendation adopted sub nom. *Rashaad*, 2020 WL 5201353 (S.D. Cal. Sept. 1, 2020) (Doc. No. 28 in Case No.

19-CV-1126-MMA-MDD granting Joint Motion for EAJA Fees and fee award of $5,700.00); *Johnson*, 2022 WL 3362051, at *14 (S.D. Cal. Aug. 15, 2022) (Doc. No. 20 in Case No. 21-CV-1284-NLS granting Joint Motion for EAJA Fees and fee award of $4,300.00).

Accordingly, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Initial Application for attorney fees and AWARDS Plaintiff $21,593.03 in attorney fees. As explained above, the Court declines to award any fees as outlined in Plaintiff's Supplemental Application and thus DENIES Plaintiff's Supplemental Application for attorney fees.

### c. Reasonableness of Plaintiff's Counsel's Requested Costs

Finally, the Court resolves the matter of costs. The EAJA provides that a prevailing party is entitled to recovering certain costs, including filling and docket-related, court reporter, copy, and printing fees. 28 U.S.C. § 1920. The EAJA also awards prevailing parties "fees and other expenses" incurred in the litigation. 28 U.S.C. § 2412 (d)(1)(A). Other expenses include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case..." 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has held that this is not an exclusive list. *See Int'l Woodworkers, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985). For example, the Ninth Circuit has upheld EAJA awards that included compensation for telephone calls, postage, air courier expenses, and travel expenses. *Id.*; *see also Thorne v. Saul*, 2019 WL 3974088, at *2 (S.D. Cal. Aug. 22, 2019) (citing same).

Pursuant to his Initial Application, Plaintiff seeks to recover $1,400 in travel costs and $100 in postage, copy, and mailing costs. (Doc. No. 32-2 at ¶ 11.) Pursuant to his Supplemental Application, Plaintiff seeks to recover $1,400.00 in airfare costs and $400.00 for ground transportation costs. (Doc. No. 38-1.) Addressing each request in turn, the Court first considers Plaintiff's costs request in his Initial Application. The Court DENIES Plaintiff's request for $1,400 in travel costs and $100 in postage, copy, and mailing costs for lack of any documentation to substantiate the costs. *See Tam Phan Nguyen v. Berryhill*,

17

2018 WL 6504150, at *5 (S.D. Cal. Dec. 11, 2018) (denying plaintiff's request for an award of Ms. Manbeck's purported costs where "Plaintiff d[id] not specify which portion of the $100 was incurred for which expense… and noting "to recover expenses related to an action, an attorney seeking an award of expenses must 'submit to the court an application… including an itemized statement") (citing 28 U.S.C. § 2412(d)(1)(B).).

  The Court next considers Plaintiff's requests for costs pursuant to the Supplemental Application, beginning with Plaintiff's counsel's purported airfare costs. Plaintiff's Declaration in support of his Supplemental Application attaches an invoice for his counsel's airfare totaling $1488.00 between State College, Pennsylvania, and San Diego, California, with a departing date of March 27, 2023, and a return date of May 3, 2023. (Doc. No. 38-1 at 5.) Counsel purports her airfare in fact cost twice as much but she split the purported $2,800 airfare bill between Plaintiff and another client. (*Id*. at ¶ 6.) The Court finds this representation and counsel's need for a roundtrip flight in this case dubious. First, Plaintiff fails to attach any invoice indicating airfare travel costs of $2,800. The only documentation Plaintiff provides is the invoice from Delta Airlines totaling $1,488.00. (*Id*.) Second, and somewhat troubling, it is unclear why Plaintiff's counsel's physical presence was necessary for her to simply speak with Plaintiff about this Court's dispositive February 27, 2023, Order. (*Id*.) Neither Plaintiff's Declaration nor Plaintiff's counsel's Declaration elucidate the Court on this matter. Instead, Plaintiff's Declaration indicates his in-person conversation with counsel lasted just "over an hour," a circumstance that further calls into question the necessity of counsel's roundtrip, cross-country flight. (Doc. No. 38-1 at ¶6.) Equally notable, as the Court has explained, compensation for discussing and preparing a party for remanded proceedings, like here, is not appropriate. The Court declines to award costs specific to administrative proceedings, where the Court has issued its dispositive order, remanded further administrative proceedings, did not retain jurisdiction over the matter, and the Parties failed to object to the Court's decision to not retain jurisdiction.

Such is the case here. For this same reason, the Court declines to award Plaintiff's counsel $400 in ground transportation costs.[2]

### d. Assignment of Rights to Counsel

The Supreme Court has held that "a § 2412(d) fees award is payable to the litigant and is therefore subject to a government offset to satisfy a pre-existing debt that the litigant owes the United States." *Astrue v. Ratliff*, 560 U.S. 586, 588–89 (2010). Nonetheless, "district courts have recognized that *Ratliff* does not prevent payment of a fee award directly to the attorney where there has been a valid assignment and the plaintiff does not owe a debt to the government." *Darren Jeffrey C. v. Kijakazi*, 2022 WL 17826795, at *3 (S.D. Cal. Dec. 20, 2022) (citing *Ulugalu v. Berryhill*, 2018 WL 2012330, at **4-5 (S.D. Cal. Apr. 30, 2018); *Bell v. Berryhill*, 2018 WL 452110, at *5 (N.D. Cal. Jan. 17, 2018); *Blackwell v. Astrue*, 2011 WL 1077765, at *4–5 (E.D. Cal. Mar. 21, 2011), *etc.*).

Here, it is unclear whether Plaintiff owes a debt to the United States Government. Neither Plaintiff's Initial Application nor his Supplemental Application aver that Plaintiff does not owe the Government a debt. (Doc. No. 32-1, 19:13-27; Doc. No. 38-1 at ¶ 6.) For this reason, the Court DENIES Plaintiff's request to assign the EAJA fee award set forth herein to Plaintiff's counsel.

## V. CONCLUSION

Given the foregoing, the Court GRANTS IN PART and DENIES IN PART Plaintiff's March 23, 2023, *Ex Parte* Application for EAJA Fees. (Doc. No. 32.) Specifically, the Court GRANTS Plaintiff an award of attorney fees in the amount of $21,593.03 and DENIES all costs under the Initial Application. Additionally, the Court

---

[2] Even if it were inclined to award transportation costs under the circumstances here – which it is not – the Court finds Plaintiff has failed to substantiate the $400 in ground transportation costs his counsel claims here. Plaintiff's counsel's April 6, 2023, billing statement attached to Plaintiff's Declaration to the Supplemental Application only shows one $83.99 charge for "Little Italy Transportation." (*Id*. at 6.) All other charges during Plaintiff's counsel's stay in San Diego as reflected on the billing statement relate to commercial shopping at Amazon, Apple, and the Home Depot. The $400 transportation charge is inadequately documented and thus not recoverable for this additional reason.

DENIES Plaintiff's May 19, 2023, Supplemental *Ex Parte* Application for EAJA Fees as to both attorney fees and costs. (Doc. No. 38.) Accordingly, Defendant is ORDERED to pay Plaintiff a total of $21,593.03 in attorney fees and no costs under the EAJA minus an offset for any federal debt Plaintiff may owe.

**IT IS SO ORDERED.**

DATED: June 20, 2023

_____
Hon. William V. Gallo
United States Magistrate Judge